DANAHY, Acting Chief Judge.
This is the second appearance here of a dispute between the parties over the ownership of certain accreted lands abutting the gulf-front upland property of Sand Key Associates, Limited (Sand Key). When the case was first here, we reversed the partial summary judgment entered on Count I in favor of the appellee (State). Sand Key Associates, Ltd. v. Board of Trustees of the Internal Improvement Trust Fund, 458 So.2d 369 (Fla. 2d DCA 1984) (Sand Key I). The effect of our reversal was to quiet title to the accreted land in Sand Key. In doing so, we held that Florida Statute 161.051[1] was constitutional but did not apply here since the public project which caused the accretion was not done on Sand Key’s property. However, recognizing that the legislative intent of section 161.051 was not clear, we certified the following question to our supreme court as one of great public importance:
PURSUANT TO SECTION 161.051, FLORIDA STATUTES (1981), IS THE STATE ENTITLED TO ACCRETED LAND OF ONLY THE UPLAND OWNER OF THE IMPROVED PROPERTY OR TO THE ACCRETED LAND OF ALL UPLAND LITTORAL OWNERS, WHETHER OR NOT THEY PARTICIPATED IN OR CONTRIBUTED TO THE IMPROVEMENT?
The supreme court has accepted jurisdiction. (Board of Trustees of the Internal Improvement Trust Fund v. Sand Key Associates, Ltd., No. 66,372.)
Subsequent to our disposition of Sand Key I, the trial court entered a final summary judgment on Count II of Sand Key’s amended complaint. That judgment is before us for review {Sand Key II). In Sand Key I, the judgment under review contained a finding that Count II was a dis *36 tinct and separate cause of action. Count II requires an answer to the question whether federal or state law determines the title to accreted lands where the littoral upland owner, as Sand Key is here, derives its title from a federal patent. The trial court, answering that question, ruled that federal law controls and that, consequently, Sand Key owned the accreted land. The result reached by the trial court in Sand Key II is consistent with the result reached by this court in Sand Key I.
We think the trial court reached the proper conclusion and we therefore affirm the judgment. Where title to oceanfront property is derived from a federal patent, federal law determines the extent of that title including title to all future accretions and all such accretions belong to the littoral landowner. See California ex rel. State Lands Commission v. United States, 457 U.S. 273, 102 S.Ct. 2432, 73 L.Ed.2d 1 (1982), and Hughes v. Washington, 389 U.S. 290, 88 S.Ct. 438, 19 L.Ed.2d 530 (1967). The common law of this state is in agreement. Board of Trustees of the Internal Improvement Trust Fund v. Medeira Beach Nominee, Inc., 272 So.2d 209 (Fla. 2d DCA 1973).
While we do affirm the ruling of the trial court, we think our supreme court should have the advantage of the parties’ arguments in this case to fully explore the important question already before the court in Sand Key I if it so chooses. Therefore, we certify the following further question to the supreme court as one of great public importance:
DOES THE ANSWER TO THE QUESTION POSED IN SAND KEY ASSOCIATES, LTD. v. BOARD OF TRUSTEES OF THE INTERNAL IMPROVEMENT TRUST FUND, 458 So.2d 369 (Fla. 2d DCA 1984), DEPEND UPON WHETHER THE TITLE OF ANY UPLAND OWNER IS TRACEABLE TO A FEDERAL PATENT?
LEHAN and HALL, JJ., concur.

. Section 161.051 provides:
Coastal construction by persons, firms, corporations, or local authorities. — Where any person, firm, corporation, county, municipality, township, special district, or any public agency shall construct and install projects when permits have been properly issued, such works and improvements shall be the property of said person, firm, corporation, county, municipality, township, special district, or any public agency where located, and shall thereafter be maintained by and at the expense of said person, firm, corporation, county, municipality, township, special district, or other public agency. No grant under this section shall affect title of the state to any lands below the mean high-water mark, and any additions or accretions to the upland caused by the erection of such works or improvements, or for any damages arising out of construction, reconstruction, maintenance, or repair thereof, or otherwise arising on account of such works or improvements.